CHAMBERS OF
**STEPHANIE A. GALLAGHER**
**UNITED STATES MAGISTRATE JUDGE**

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

November 4, 2013

LETTER TO COUNSEL:

> RE: *Lavonne Crudup v. Commissioner, Social Security Administration*;
> Civil No. SAG-13-860

Dear Counsel:

On March 22, 2013, the Plaintiff, Lavonne Crudup, petitioned this Court to review the Social Security Administration's final decision to deny her claim for Supplemental Security Income. (ECF No. 1). I have considered the parties' cross-motions for summary judgment, and the plaintiff's response. (ECF Nos. 15, 17, 18). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (superseded by statute on other grounds). Under that standard, I will grant the Commissioner's motion and deny Plaintiff's motion. This letter explains my rationale.

Ms. Crudup filed her claim for benefits on May 7, 2010, alleging disability beginning on September 19, 2009. (Tr. 183-86). Her claim was denied initially on November 24, 2010, and on reconsideration on February 10, 2011. (Tr. 52-55, 66-67). A hearing was held on December 12, 2011 before an Administrative Law Judge ("ALJ"). (Tr. 27-49). Following the hearing, on January 20, 2012, the ALJ determined that Ms. Crudup was not disabled during the relevant time frame. (Tr. 8-26). The Appeals Council denied Ms. Crudup's request for review, (Tr. 1-5), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Ms. Crudup suffered from the severe impairments of major depressive disorder (recurrent and severe), anxiety, personality disorder, rule out malingering, Achilles tendonitis, a history of osteoporosis, and obesity. (Tr. 13). Despite these impairments, the ALJ determined that Ms. Crudup retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 416.967(b), except the claimant can only occasionally stoop, twist, crouch, kneel, crawl, balance, and/or climb ramps and stairs, but must never climb ladders, ropes or scaffolds. The claimant can understand, remember, and carry out simple instructions and can only perform simple routine tasks with occasional changes in work setting. The claimant can work in an environment without required interaction with the public and can occasionally interact with co-workers and supervisors.

*Lavonne Crudup v. Commissioner, Social Security Administration*
Civil No. SAG-13-860
November 4, 2013
Page 2

(Tr. 15). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Crudup could perform jobs that exist in significant numbers in the national economy, and that she was therefore not disabled during the relevant time frame. (Tr. 21).

Ms. Crudup presents three arguments on appeal: (1) that the ALJ erred in determining her RFC and, therefore, presented an inaccurate hypothetical to the VE; (2) that the ALJ improperly relied upon GAF scores in assessing her mental limitations; and (3) that the ALJ erroneously relied upon non-compliance to find Ms. Crudup not disabled. Each argument lacks merit.

Ms. Crudup challenges the ALJ's RFC analysis pertaining to both her physical and mental limitations. Pl. Mot. 7-8. First, she argues that the ALJ erred by not limiting her to sedentary work. State agency consulting physician Dr. Hakkarinen found Ms. Crudup capable of standing and walking "at least 2 hours" in an eight-hour workday.[1] (Tr. 375). Consultative examiner Dr. Julka found that while Ms. Crudup walked with a cane and had an unsteady gait, she had no falls or was not limited in her movement. (Tr. 365-66). The ALJ assigned Dr. Hakkarinen's opinion "substantial weight" because it was supported by the record as a whole and consistent with Dr. Julka's findings. (Tr. 20). However, in a separate discussion in her opinion, the ALJ found Ms. Crudup not credible regarding her need for a cane, as there was "little in the medical evidence to support the need for a cane[.]" (Tr. 16). The ALJ noted that Ms. Crudup complained of foot and heel pain during a single emergency room visit in June, 2010. (Tr. 16, 356-62). As a result, Ms. Crudup was diagnosed with Achilles tendonitis and paresthesia, prescribed pain medicine, and referred to a podiatrist. (Tr. 358). As the ALJ observed, Ms. Crudup made a follow up visit with Dr. Green two days later, and he found only mild puffiness. (Tr. 415-16). He referred her to a podiatrist as well, *id.*, but there is no indication she sought further treatment. Because the ALJ adequately explained her rationale for discounting Ms. Crudup's complaints of foot pain and limited mobility, I cannot find that she erred in finding Ms. Crudup's ability to stand and walk to be somewhat greater than that found by Dr. Hakkarinen.[2] Assigning a physician's opinion "significant weight" does not require the ALJ to adopt each and every finding in an opinion. Second, Ms. Crudup argues that the ALJ's RFC and hypothetical did not include her mental limitations. In fact, the ALJ found Ms. Crudup's depression, anxiety, and personality disorder to be severe limitations. (Tr. 13). The ALJ then applied the mental special technique and found Ms. Crudup had mild to moderate limitations in her activities of daily living; social functioning; and in concentration, persistence, and pace; but had experienced

---

[1] Sedentary work often involves "a certain amount of walking and standing[.]" 20 C.F.R. § 404.1567(a). Light work "requires a good deal of walking or . . . it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* § 404.1567(b).

[2] Ms. Crudup suggests that Dr. Hakkarinen found her capable of standing and walking only two hours per day, a limitation later confirmed by Dr. Robbins. (Pl. Mot. 3, Tr. 375, 445). In fact, however, Dr. Hakkarinen indicated that Ms. Crudup could stand and/or walk for "at least two hours[,]" but did not select "about 6 hours[,]" (Tr. 375), suggesting that he believed her capable of standing and/or walking somewhere between two and six hours. Thus, the ALJ's RFC of light work is not inherently inconsistent with Dr. Hakkarinen's opinion.

no episodes of decompensation. (Tr. 14). Finally, the ALJ thoroughly analyzed the records pertaining to Ms. Crudup's mental limitations, and included a limitation to performance of simple, routine tasks and only occasional interaction with the public and co-workers in her RFC and hypothetical to account for Ms. Crudup's mental impairments. (Tr. 15-20, 46). Because the ALJ fulfilled her duty of explanation, I find no reason for remand based on the RFC analysis.

Second, Ms. Crudup argues that the ALJ improperly relied upon GAF scores in analyzing her mental impairments. Pl. Mot. 8-10. It is well established that GAF scores are not determinative of disability. *See, e.g., Davis v. Astrue,* Case No. JKS-09-2545, 2010 WL 5237850, at *3 (D. Md. Dec. 15, 2010). However, nothing prohibits an ALJ from considering GAF scores as one component of a full analysis of the evidence of record. As discussed above, the ALJ conducted a full analysis and thoroughly considered numerous treatment notes, in addition to comparing the inconsistent GAF scores that Ms. Klein and Ms. Johnson assigned to Ms. Crudup while concurrently treating her. (Tr. 15-20). Ms. Crudup also cites *Foster v. Heckler*, 780 F.2d 1125, 1130 to assert that the ALJ could not assign lesser weight to Ms. Klein's opinion without pervasive contradictory evidence. Pl. Mot. 10. However, *Foster v. Heckler* is inapplicable. Ms. Klein, a licensed social worker, is considered an "other source" rather than an "acceptable medical source" under SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). Information from "other sources" may provide insight into the severity of an impairment, but they "cannot establish the existence" of a disabling impairment. *Id.* at *2. Rather, an ALJ may consider the opinion of other sources, including treating therapists, in light of "how consistent the opinion is with other evidence," and "any other factors that tend to support or refute the opinion." *Id.* at *4. It was well within the ALJ's discretion to assign little to no weight to Ms. Klein's opinions that Ms. Crudup was disabled because of both her mental and physical impairments. As the ALJ noted, Ms. Klein is a social worker and not trained to assess physical limitations. (Tr. 19). Ms. Klein also opined that Ms. Crudup had "constant" difficulties in maintaining concentration, persistence, and pace, (Tr. 448), and had very limited abilities to make occupational adjustments, (Tr. 483-84). However, the ALJ discounted Ms. Klein's opinion based on its inconsistency with Ms. Johnson's observations, and Ms. Crudup's sporadic seeking of treatment and continual failure to maintain her prescribed drug regime. (Tr. 19-20). Thus, I can find no error in the ALJ's assignment of little weight to Ms. Klein's opinion.

Finally, Ms. Crudup argues that the ALJ improperly relied upon noncompliance to find her not disabled. Pl. Mot. 11-12. First, Ms. Crudup argues that the ALJ erroneously found her noncompliant in maintaining her prescriptions to control her hypertension. In actuality, the section of the ALJ's decision that Ms. Crudup quotes refers to her noncompliance in taking medications to control her depression and anxiety and failure to keep appointments with her mental health providers. (Tr. 19). The ALJ did, in fact, find Ms. Crudup's hypertension non-severe because it is well controlled "when [she] takes her anti-hypertensive medication."[3] (Tr. 13). However, the ALJ did not rely on noncompliance to make her determination on whether

---

[3] During a September, 2009 emergency room visit for chest pain, Ms. Crudup reported that she had been off of her hypertension medications for about a year. (Tr. 293). In May, 2011, Ms. Crudup reported to Dr. Green that she had been without her hypertension medications for ten months. (Tr. 463).

Ms. Crudup was disabled.  Instead, the ALJ cited noncompliance as one of her reasons for finding Ms. Crudup less than fully credible in statements regarding the severity of her mental impairments.  An "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure."  SSR 96-7p, 1996 WL 374186, at *7.  Under SSR 96-7p, noncompliance is properly one factor to consider when determining credibility.  *Bettis v. Astrue*, CIV. SKG-12-826, 2013 WL 1209408, at *11 (D. Md. Mar. 22, 2013).  A number of treatment notes indicate that Ms. Crudup was frequently reminded of the importance of taking her medications and keeping her appointments, *see e.g.* (Tr. 407), and the clinic even offered to help her with transportation to appointments, (Tr. 436).  Moreover, the treatment notes reflect improvement of symptoms during periods of compliance.  *See, e.g.,* (Tr. 450, 455).

For the reasons set forth herein, Plaintiff's motion for summary judgment (ECF No. 15) will be DENIED and the Commissioner's motion for summary judgment (ECF No. 17) will be GRANTED.  The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion.  An implementing Order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge